Filed 1/29/15

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| JAMES RICHARD JOHNSON, | ) | |
| | ) | |
| Plaintiff and Appellant, | ) | |
| | ) | S209167 |
| v. | ) | |
| | ) | Ct.App. 4/2 E055194 |
| DEPARTMENT OF JUSTICE | ) | |
| | ) | San Bernardino County |
| Defendant and Respondent; | ) | Super. Ct. No. CIVDS 1105422 |
| | ) | |
| THE PEOPLE, | ) | |
| | ) | |
| Real Party in Interest | ) | |
| and Respondent. | ) | |
| _____ | ) | |

The Legislature has long demonstrated a strong resolve to protect children from sexually inappropriate conduct of all kinds, including sexual intercourse and oral copulation. Depending on the nature of the conduct and the ages of the offender and the minor victim, conviction of a sexual contact crime may subject the offender to incarceration, civil penalties, and other consequences. One of the significant consequences includes application of the Sex Offender Registration Act (Pen. Code, § 290 et seq.),[1] which was enacted to prevent recidivism of sex offenders and facilitate their surveillance by police. As relevant here, the act

---

[1] Unless otherwise indicated, all further statutory references are to this code.

1

allows for *discretionary* sex offender registration for those convicted of unlawful sexual intercourse with a minor (§§ 261.5, 290.006), but imposes *mandatory* registration for those convicted of crimes involving other types of sexual activity with a minor (§ 290, subds. (b), (c)).

This court previously addressed this statutory disparity in *People v. Hofsheier* (2006) 37 Cal.4th 1185 (*Hofsheier*). *Hofsheier* interpreted the federal and state equal protection clauses as invalidating mandatory sex offender registration for a 22-year-old defendant convicted of nonforcible oral copulation with a person 16 years of age (§ 288a, subd. (b)(1)), for the reason that a same-aged defendant convicted of unlawful sexual intercourse with a same-aged minor (§ 261.5) is subject to discretionary registration.[2] (See U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a).) Although *Hofsheier* attempted to limit its holding to the factual circumstances before it, the Courts of Appeal have extended *Hofsheier*'s reach to additional sex crimes involving adult offenders and minor victims of various ages and age differences, including crimes involving offenders 30 years or older or victims under 16 years of age. (See *post*, at pp. 7-8.)

Plaintiff James Richard Johnson seeks to invoke *Hofsheier* in the context of his conviction for nonforcible oral copulation by an adult over 21 years with a person under 16 years of age. (§ 288a, subd. (b)(2).) At this juncture, however,

_____

[2]    Throughout the *Hofsheier* opinion, this court referred to the offense defined by section 288a, subdivision (b), as "voluntary oral copulation" and to the offense defined by section 261.5 as "voluntary sexual intercourse" or "unlawful sexual intercourse." We shall refer to these offenses as "nonforcible oral copulation" and "unlawful sexual intercourse," with the understanding that such offenses do not involve the perpetrator's use of "force, violence, duress, menace, or fear of immediate and unlawful bodily injury" on the victim or another person (§§ 288a, subd. (c)(2), 261, subd. (a)(2)) or other statutory aggravating circumstances (e.g., §§ 288a, subds. (c)(3), (f), (i), (k), 261, subd. (a)(1), (3)-(7)).

continued judicial nullification of mandatory registration is denying significant effect to the legislative policy choices embodied in the Sex Offender Registration Act. Because the Legislature cannot restore the constitutional validity of requiring registration for statutorily enumerated crimes without making registration mandatory for unlawful sexual intercourse, we deem it prudent to revisit *Hofsheier*'s merits.

Upon reexamination, we find *Hofsheier*'s constitutional analysis faulty. In particular, it mistakenly concluded that no rational basis exists for subjecting intercourse offenders and oral copulation offenders to different registration consequences. Although *Hofsheier* accepted the reasonableness of the Legislature's determination that, generally, mandatory registration promotes the policy goals of preventing recidivism and facilitating surveillance of sex offenders who prey on underage victims, the decision failed to adequately appreciate that, among sex offenses, intercourse is unique in its potential to result in pregnancy and parenthood. Given that unique potential, legislative concerns regarding teen pregnancy and the support of children conceived as a result of unlawful sexual intercourse provide more than just a plausible basis for allowing judicial discretion in assessing whether perpetrators of that crime should be required to register, while mandating registration for perpetrators of other nonforcible sex crimes.

Like the United States Supreme Court, "[w]e do not lightly reconsider a precedent" and are mindful that "*stare decisis* is the 'preferred course' in constitutional adjudication." (*United States v. Dixon* (1993) 509 U.S. 688, 711, 712.) But *Hofsheier*'s flawed constitutional analysis is having a broad impact, and " 'correction through legislative action is practically impossible.' " (*Payne v. Tennessee* (1991) 501 U.S. 808, 828.) Accordingly, we acknowledge the decision was in error and hereby overrule it.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1990, a five-count complaint was filed against James Richard Johnson, alleging two counts of lewd acts upon a child under 14 years of age, a felony (§ 288, subd. (a)), one count of nonforcible sodomy with a minor under 16 years of age, a felony (§ 286, subd. (b)(2)), and two counts of nonforcible oral copulation by a person over 21 years of age with a minor under 16 years of age, a felony (§ 288a, subd. (b)(2) (hereafter section 288a(b)(2)). All of these counts named the same girl as the alleged victim. Johnson, who was 27 years old at the time of the alleged conduct, pleaded guilty to a single count of felony nonforcible oral copulation in violation of section 288a(b)(2). As part of that plea, Johnson initialed and signed a declaration in which he acknowledged: "If I plead guilty to any sex crime covered by Penal Code Section 290, I will be required to register as a sex offender . . . ." Johnson's section 288a(b)(2) conviction resulted in a two-year prison sentence and mandatory sex offender registration under section 290.

In 2006, our *Hofsheier* decision found an equal protection violation in section 290's mandatory registration provision for a different subdivision of section 288a, i.e., section 288a, subdivision (b)(1) (hereafter section 288a(b)(1)), which is an alternative felony/misdemeanor "wobbler" offense. (*Hofsheier*, *supra*, 37 Cal.4th at pp. 1192-1193.) Citing *Hofsheier* and its progeny, Johnson filed a petition for a writ of mandate in superior court in 2011, seeking his removal from the sex offender registry maintained by the California Department of Justice and relief from future registration obligations. (See *People v. Picklesimer* (2010) 48 Cal.4th 330.) The superior court denied the petition in reliance on *People v. Manchel* (2008) 163 Cal.App.4th 1108 (*Manchel*), a case that had rejected a *Hofsheier* claim by a 29-year-old defendant convicted of section 288a(b)(2), the same felony oral copulation offense at issue here.

4

In reversing the superior court judgment, the Court of Appeal agreed with other appellate decisions that criticized *Manchel*'s holding and rationale. (See *People v. Luansing* (2009) 176 Cal.App.4th 676 (*Luansing*); *People v. Ranscht* (2009) 173 Cal.App.4th 1369 (*Ranscht*).) Finding that section 290's registration requirement violated Johnson's equal protection rights, the court remanded the matter to the superior court for a determination whether he should be required to register under the discretionary registration provision in section 290.006.

We granted review to decide whether Johnson is entitled to relief under *Hofsheier*'s equal protection analysis. Thereafter we requested briefing on whether this court should overrule *Hofsheier*, and if so, whether our decision should apply retroactively.

## DISCUSSION

Section 290 is a key provision of California's Sex Offender Registration Act that " 'applies automatically' " to section 288a and the other offenses enumerated therein, and " 'imposes on each person convicted a lifelong obligation to register.' [Citations.] Registration is mandatory [citation], and is 'not a permissible subject of plea agreement negotiation' [citation]." (*Wright v. Superior Court* (1997) 15 Cal.4th 521, 527 (*Wright*).)

Section 290 "is intended to promote the ' "state interest in controlling crime and preventing recidivism in sex offenders" ' " (*Wright*, *supra*, 15 Cal.4th at p. 527) and serves "an important and vital public purpose by compelling registration of many serious and violent sex offenders who require continued public surveillance" (*Hofsheier*, *supra*, 37 Cal.4th at p. 1208; see *Wright*, at p. 527). Children, in particular, "are a class of victims who require paramount protection" from sex offenders (*People v. Tate* (1985) 164 Cal.App.3d 133, 139), and mandating lifetime registration of those who prey on underage victims serves

5

"to notify members of the public of the existence and location of sex offenders so they can take protective measures" (*Hofsheier*, at p. 1196).

## A. *Hofsheier* and its Progeny

In *Hofsheier*, *supra*, 37 Cal.4th 1185, the defendant claimed section 290's provision for *mandatory* registration of persons convicted of nonforcible oral copulation with a minor 16 or 17 years of age (§ 288a(b)(1)) violated his rights under the federal and state constitutional equal protection clauses, because persons convicted of unlawful sexual intercourse with a minor of 16 or 17 years of age (§ 261.5) were subject to *discretionary* sex offender registration under former section 290, subdivision (a)(2)(E) (now § 290.006).[3] *Hofsheier* analyzed this equal protection claim in two steps.

*Hofsheier* first assessed whether, for purposes of sex offender registration, those convicted of nonforcible oral copulation are " '*similarly situated*' " to those convicted of unlawful sexual intercourse. (*Hofsheier*, *supra*, 37 Cal.4th at p. 1199.) *Hofsheier* answered this question in the affirmative, stating "[t]he only difference" between nonforcible oral copulation under section 288a(b)(1), which

---

[3]     *Hofsheier* concerned a prior version of section 290, which was repealed and reenacted in 2007. The discretionary registration provision that was included in that prior version now appears in section 290.006, which provides: "Any person ordered by any court to register pursuant to the [Sex Offender Registration] Act for any offense not included specifically in subdivision (c) of Section 290, shall so register, if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for the purposes of sexual gratification. The court shall state on the record the reasons for its findings and the reasons for requiring registration."

Unlike a person charged with a sex offense enumerated in section 290, a person charged with an offense subject to discretionary registration "may be able to stipulate in a plea bargain that the trial judge will not order registration." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1198.)

mandates registration, and unlawful sexual intercourse under section 261.5, which does not, is "the nature of the sexual act." (*Hofsheier*, at p. 1200.)

*Hofsheier* next examined whether a "rational basis" supports the statutory classification mandating lifetime sex offender registration by a person convicted of nonforcible oral copulation with a 16-year-old minor (§ 288a(b)(1)), but not by a person convicted of unlawful sexual intercourse with a 16-year-old minor (§ 261.5). (*Hofsheier*, *supra*, 37 Cal.4th at p. 1201.) While conceding there may be a rational basis to subject *both* categories of offenders to mandatory registration (*id*. at pp. 1202, 1207), *Hofsheier* could find no plausible basis — that is, no reasonably conceivable factual basis — for restricting application of the discretionary registration provision to the offenders convicted of unlawful intercourse (*id*. at pp. 1202-1204). *Hofsheier* therefore concluded that section 290's registration mandate violated the equal protection rights of section 288a(b)(1) offenders. (*Hofsheier*, at pp. 1206-1207.)

Although *Hofsheier* attempted to limit its holding to the factual circumstances before it, the Courts of Appeal have extended its application to additional nonforcible sex offenses covered by section 290. (E.g., *People v. Thompson* (2009) 177 Cal.App.4th 1424, 1430-1431 [*Hofsheier* extended to 36-year-old defendant convicted of nonforcible sodomy with 17-year-old minor (§ 286, subd. (b)(1))]; *Luansing*, *supra*, 176 Cal.App.4th at p. 685 [30-year-old defendant convicted of nonforcible oral copulation of minor under 16 years (§ 288a(b)(2))]; *Ranscht*, *supra*, 173 Cal.App.4th at p. 1375 [18-year-old defendant convicted of nonforcible digital penetration of 13-year-old (§ 289, subd. (h))]; *In re J.P.* (2009) 170 Cal.App.4th 1292, 1299-1300 [nonforcible oral copulation between 12-year-old juvenile and minor under 18 years (§ 288a(b)(1)), though minor in fact was under 14]; see also *People v. Ruffin* (2011) 200 Cal.App.4th 669, 673-675 [*Hofsheier* extended to defendant convicted of

nonforcible oral copulation while incarcerated (§ 288a, subd. (e)), because prison guards convicted of nonforcible oral copulation with prisoners (§ 289.6, subd. (a)(2)) are subject to discretionary registration].)[4] Consequently, *Hofsheier*'s equal protection analysis is denying significant effect to section 290.

Here, the parties dispute *Hofsheier*'s expansion to the crime for which Johnson was convicted. Three Court of Appeal decisions squarely hold *Hofsheier*'s equal protection analysis logically applies to the offense of nonforcible oral copulation with a minor under 16 years (§ 288a(b)(2)). (*Luansing*, *supra*, 176 Cal.App.4th at p. 685; *People v. Hernandez* (2008) 166 Cal.App.4th 641, 648-651; *People v. Garcia* (2008) 161 Cal.App.4th 475, 481-482.) One Court of Appeal decision, however, distinguished *Hofsheier* and upheld mandatory registration for a section 288a(b)(2) conviction where, as here, the ages of the offender and the victim rendered the offender additionally subject to prosecution for lewd conduct under section 288, subdivision (c)(1) (section 288(c)(1)). (*Manchel*, *supra*, 163 Cal.App.4th at p. 1115.) *Manchel*'s efforts to distinguish *Hofsheier* were criticized in *Luansing*, *supra*, 176 Cal.App.4th at pages 683-685, and in cases involving offenses other than section 288a(b)(2). (E.g., *Ranscht*, *supra*, 173 Cal.App.4th at pp. 1373-1374; *In re J.P.*, *supra*, 170 Cal.App.4th at pp. 1297-1299.)

---

[4]  In *People v. Kennedy* (2009) 180 Cal.App.4th 403, 409-410, moreover, the Court of Appeal indicated that equal protection claims involving section 290 not only require comparison between section 261.5 and the sex offense of which the subject defendant was convicted (there, § 288.2 [distribution of harmful matter to a minor]), but also require comparison and analysis of other sex offenses for which mandatory registration was judicially invalidated (e.g., § 288a(b)(1) [the offense in *Hofsheier*]). (See also *People v. Singh* (2011) 198 Cal.App.4th 364, 366-367; *People v. Thompson*, *supra*, 177 Cal.App.4th at p. 1431.)

We need not resolve whether *Manchel* properly distinguished *Hofsheier*. As we shall explain, *Hofsheier*'s equal protection analysis is fundamentally flawed and deserves to be overruled.

### B. Stare Decisis

It is a familiar axiom that "[*s*]*tare decisis* is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." (*Payne v. Tennessee*, *supra*, 501 U.S. at p. 827.) "Adhering to precedent 'is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than it be settled right.' " (*Ibid*.)

Nonetheless, we, as the highest court in California, should not feel constrained to follow "unworkable" or "badly reasoned" decisions, any more than the United States Supreme Court does. (*Payne v. Tennessee*, *supra*, 501 U.S. at p. 827; *Seminole Tribe of Fla. v. Florida* (1996) 517 U.S. 44, 63.) "This is particularly true in constitutional cases," where, as here, " 'correction through legislative action is practically impossible.' " (*Payne*, at p. 828; accord, *Board of Supervisors v. Local Agency Formation Com.* (1992) 3 Cal.4th 903, 921 ["stare decisis compels less deference to precedent when constitutional principles are applied to deny effect to an enactment"].) Erroneous precedent need not be dated or widely criticized to warrant overruling. (E.g., *United States v. Dixon*, *supra*, 509 U.S. at pp. 711-712, overruling *Grady v. Corbin* (1990) 495 U.S. 508; *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 762-763, overruling *ITT Small Business Finance Corp. v. Niles* (1994) 9 Cal.4th 245; *People v. Ewoldt* (1994) 7 Cal.4th 380, 398-401, overruling *People v. Tassell* (1984) 36 Cal.3d 77 & *People v. Ogunmola* (1985) 39 Cal.3d 120.)

As detailed below, *Hofsheier* failed to recognize that, with regard to sex offender registration, concerns regarding recidivism, teen pregnancy, and child support obligations provide a rational basis for treating offenders who engage in unlawful sexual intercourse differently from those engaging in nonforcible oral copulation. *Hofsheier*'s faulty analysis has now resulted in a number of sex crimes against minors being judicially excluded from mandatory registration, despite the legislative intent to exclude only one. *Hofsheier*, moreover, leaves the Legislature with a classic Hobson's choice: If the Legislature wishes to effectuate its policy judgment that mandatory registration is appropriate for sex offenders convicted of crimes other than unlawful intercourse, then the only option realistically available is to add section 261.5 to section 290's list of mandatory offenses — but that is precisely what the Legislature has repeatedly refused to do in light of the unique potential for pregnancy and parenthood that attends section 261.5 offenses.

Given the broad consequences of *Hofsheier*'s equal protection analysis and the Legislature's inability to take corrective action, we shall not allow principles of stare decisis to block correction of this error in our constitutional jurisprudence. (*Board of Supervisors v. Local Agency Formation Com.*, *supra*, 3 Cal.4th at p. 921.)[5]

---

[5]     The dissent asserts that the potential impact of *Hofsheier*'s equal protection analysis is quite limited and suggests that judicial extension of its application has been modest without posing any conundrum. (Dis. opn., *post*, at pp. 5-6, 26.) The cases cited above (*ante*, at pp. 7-8) prove otherwise. Bound by our precedent, the appellate courts have applied *Hofsheier* to invalidate mandatory registration for several offenses far beyond the narrow circumstances *Hofsheier* contemplated and, as explained below (*post*, at pp. 16-21), in contravention of legislative intent. The dissent fails to explain how we are to curb such expansion short of overruling *Hofsheier*. Indeed, we granted review in this case because the court in *Manchel, supra,* 163 Cal.App.4th 1108, attempted to narrow *Hofsheier*'s reach in a manner

*(footnote continued on next page)*

**C.  *Hofsheier*'s Rational Basis Analysis is Demonstrably Wrong**

Here, as in *Hofsheier*, there is no reason to suppose that analysis under the federal equal protection clause would lead to a result different than that obtained under a state clause analysis.  While our court has authority to construe our state Constitution independently (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 571-572), we agree with our approach in *Hofsheier* that, in a case such as this, the high court's analysis of federal due process and equal protection principles are persuasive for purposes of the state Constitution.  (See *Hofsheier*, *supra*, 37 Cal.4th at pp. 1199-1201; see also *People v. Turnage* (2012) 55 Cal.4th 62, 74-79 (*Turnage*); *Manduley*, at pp. 571-572.)

Both *Hofsheier* and this matter involve a claimed equal protection violation based on the circumstance that section 290 includes oral copulation (§ 288a), but not unlawful sexual intercourse (§ 261.5), on its list of offenses mandating sex offender registration; unlawful intercourse is instead subject to discretionary registration under section 290.006 (see former § 290, subd. (a)(2)(E)).  *Hofsheier* involved a 16-year-old victim (§ 288a(b)(1)), while this case involves a victim *under* 16 years of age (§ 288a(b)(2)).

Where, as here, a disputed statutory disparity implicates no suspect class or fundamental right, "equal protection of the law is denied only where there is no

---

*(footnote continued from previous page)*

prompting stark criticism from other appellate courts.  The dissent makes no attempt to resolve this issue.  Rather, at bottom, it defends *Hofsheier*'s equal protection analysis as a fair and equitable judicial reform of a registration scheme with which it disagrees.  (Dis. opn., *post*, at pp. 6-8.)  Clearly, however, the rational basis standard does not give courts free license to judge the wisdom or desirability of statutes or to act as a super-legislature.  (*Estate of Horman* (1971) 5 Cal.3d 62, 77; accord, *Heller v. Doe* (1993) 509 U.S. 312, 319 (*Heller*).)

'rational relationship between the disparity of treatment and some legitimate governmental purpose.' " (*Turnage*, *supra*, 55 Cal.4th at p. 74, quoting *Heller*, *supra*, 509 U.S. at p. 320.) "This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. Nor must the underlying rationale be empirically substantiated. [(*Heller*, at p. 320.)] While the realities of the subject matter cannot be completely ignored (*id*. at p. 321), a court may engage in ' "rational speculation" ' as to the justifications for the legislative choice (*id*. at p. 320). It is immaterial for rational basis review 'whether or not' any such speculation has 'a foundation in the record.' " (*Turnage*, at pp. 74-75.) To mount a successful rational basis challenge, a party must " 'negative every conceivable basis' " that might support the disputed statutory disparity. (*Heller*, at p. 320; see *Turnage*, at p. 75.) If a plausible basis exists for the disparity, courts may not second-guess its " 'wisdom, fairness, or logic.' " (*Heller*, at p. 319; *Turnage* at p. 74.)

As noted, it is settled that section 290's lifetime registration requirement legitimately intends to "promote the ' "state interest in controlling crime and preventing recidivism in sex offenders." ' " (*Wright*, *supra*, 15 Cal.4th at p. 527.) Moreover, there is no doubt that mandatory registration for sex offenders who prey on underage victims is rationally related to that important and vital public purpose. (See *Hofsheier*, *supra*, 37 Cal.4th at p. 1207.) Accordingly, an equal protection challenge can be sustained only if section 261.5 offenders and section 288a offenders are similarly situated, and if the challenger " 'negative[s] every conceivable basis' " that might support section 261.5's omission from section 290's list of offenses subject to mandatory registration. (*Heller*, *supra*, 509 U.S. at p. 320; see *Turnage*, *supra*, 55 Cal.4th at pp. 74-75.)

*Hofsheier* concluded that, despite the different sex acts involved, persons convicted of nonforcible oral copulation with minors and persons convicted of

12

unlawful sexual intercourse with minors are similarly situated so as to merit an examination whether distinctions between the two groups justify unequal registration treatment. (*Hofsheier, supra*, 37 Cal.4th at pp. 1199-1200.) We need not reconsider this conclusion, because, in any event, we find *Hofsheier* erroneous in its rational basis analysis. As explained below, the nature and potential consequences of unlawful sexual intercourse provide actual and plausible rationales for the Legislature's omission of section 261.5 from section 290's list of offenses.

In *Hofsheier*, this court professed to find no plausible rationale or reasonably conceivable factual basis that would justify different registration consequences for persons convicted of nonforcible oral copulation with a minor and those convicted of unlawful sexual intercourse with a minor of the same age. In particular, *Hofsheier* found the difference in treatment reflects "a historical atavism dating back to a law repealed over 30 years ago that treated all oral copulation as criminal regardless of age or consent." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1206.) *Hofsheier* essentially assumed that, once consensual sexual conduct between adults was decriminalized in 1975, the Legislature never affirmatively decided to impose mandatory registration on those convicted of nonforcible oral sex with minors. (*Id.* at pp. 1206-1207.) For this reason, *Hofsheier* viewed section 290's current listing of nonforcible section 288a offenses as lacking a rational basis.

Upon reconsideration of the matter, and contrary to the dissent's speculation, we find the notion of legislative inattention does not persuasively explain section 290's continued listing of nonforcible section 288a offenses. First, despite numerous amendments and reenactments over the years (at least 10 since 1993), section 290 has continued to include all forcible and nonforcible section 288a offenses. There is no indication this has resulted from multiple oversights on

13

the Legislature's part. Second, the year after *Hofsheier* was decided, the Legislature repealed and reenacted section 290 and enacted section 290.019. (Stats. 2007, ch. 579, § 27.) That statute reflects an express policy decision that relief from section 290's registration requirement is warranted only for persons who demonstrate that their section 288a or section 286 conviction was for "conduct between consenting adults," and not for those whose crimes involved minor victims. (§ 290.019, subd. (a).) Third, it is notable that, earlier this year, the Legislature actually considered and rejected a bill that proposed to conform statutory law to the court decisions invalidating section 290's application to persons convicted of nonforcible oral copulation, sodomy, and sexual penetration involving minor victims 14 years of age or older. (Assem. Bill No. 1640 (2013-2014 Reg. Sess.) as amended Apr. 2, 2014, § 2.) In sum, section 290's present inclusion of nonforcible section 288a violations is not due to the supposed failure of lawmakers to reevaluate the matter.

*Hofsheier* also reasoned that subjecting section 288a(b)(1) offenders to mandatory registration "cannot be justified by the speculative possibility that members of [that] group are more likely to reoffend than [section 261.5 offenders]." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1204.) In this regard, *Hofsheier* remarked it could "perceive no reason why the Legislature would conclude that persons who are convicted of voluntary oral copulation with adolescents 16 to 17 years old [(§ 288a(b)(1))], as opposed to those who are convicted of voluntary intercourse with adolescents in that same age group [(§ 261.5)], constitute a class of 'particularly incorrigible offenders' [citation] who require lifetime surveillance as sex offenders." (*Hofsheier*, at pp. 1206-1207.)

There is, in fact, much more than a speculative possibility that sexual predators are more successful in manipulating minors to engage in oral copulation, as opposed to sexual intercourse. Studies indicate that pubescent minors may be

14

more receptive to engaging in oral sex, which does not risk pregnancy and which many such minors believe is lower in risk for sexually transmitted diseases. (E.g., Halpern-Felsher et al., *Oral Versus Vaginal Sex Among Adolescents: Perceptions, Attitudes, and Behavior* (Apr. 2005) 115, No. 4 Pediatrics 845, currently available online at http://pediatrics.aappublications.org/content/115/4/845.full.pdf+html [as of Jan. 29, 2014] (Halpern-Felsher).)[6] As for pedophiles, who, by definition, target prepubescent minors, studies show that, "[t]ypically, pedophiles engage in fondling and genital manipulation more than intercourse," except in cases of incest, forcible encounters, and when pedophiles prefer older children. (Hall et al., *A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues* (Apr. 2007) 82 Mayo Clinic Proceedings 457, 458, currently available online at www.mayoclinicproceedings.org/article/S0025-6196(11)61074-4/fulltext [as of Jan. 29, 2014].) In light of the foregoing, the Legislature could plausibly assume

---

[6]     This article references a study reflecting that the surveyed adolescents "evaluated oral sex as significantly less risky than vaginal sex on health, social, and emotional consequences" and "believed that oral sex is more acceptable than vaginal sex for adolescents their own age in both dating and nondating situations, [that] oral sex is less of a threat to their values and beliefs, and [that] more of their peers will have oral sex than vaginal sex in the near future." (Halpern-Fisher, *supra*, Abstract, at p. 845.)

We note *Hofsheier* found little relevance in "various media reports that oral copulation among adolescents has increased in recent years because oral copulation involves no risk of pregnancy and has a lesser risk of transmitting HIV," because such reports apparently discussed "sexual conduct between adolescents, not conduct between adolescents and adults." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1203, fn. omitted.) The Halpern-Felsher article, however, does not indicate its cited survey pertained solely to sexual activity between adolescents, and Johnson points to nothing suggesting that adolescent attitudes and practices would be different with regard to the same sexual conduct between adolescents and adults.

15

that predators and pedophiles engaging in oral copulation have more opportunities to reoffend than those engaging in sexual intercourse, and, for that reason, are especially prone to recidivism and require ongoing surveillance.

Moreover, no one disputes that section 290's application to section 288a(b)(1) offenses, considered alone, is rationally related to the legislative goals of deterrence, preventing recidivism, and protecting the public. Therefore, the question is not whether such goals would be adequately promoted by allowing discretionary, as opposed to mandatory, registration for such offenses. Instead, the relevant inquiry is whether a legitimate reason exists that permits the Legislature to require registration for nonforcible oral copulation offenses while affording trial courts discretion for unlawful sexual intercourse offenses.

Contrary to *Hofsheier*'s observation, "the nature of the sexual act" is not the "only difference" between unlawful sexual intercourse and nonforcible oral copulation. (*Hofsheier*, *supra*, 37 Cal.4th at p. 1200.) Among the various sex offenses, unlawful sexual intercourse is unique in its potential to result in pregnancy and parenthood. The act of intercourse, by itself, nearly always carries this potential, while engaging in oral copulation or other non-intercourse sexual activity, by itself, never does. Given the potential life-altering consequences of intercourse, it may seem, at first blush, anomalous that section 261.5 is one of the only — if not *the* only — offenses proscribing sexual contact with a minor that is subject to discretionary, as opposed to mandatory, registration. (§ 290.006.)

Though section 261.5 violations may seem just as deserving of mandatory registration as nonforcible oral copulation offenses, the legislative history of section 261.5 dispels any notion that confining the availability of discretionary registration to intercourse offenders has no rational basis. The 1970 legislation that separated the offenses of rape and unlawful sexual intercourse with a female under age 18 — by moving the latter from the general rape statute (§ 261) to

16

section 261.5 — originated with the State Bar of California. (Sen. Bill No. 497 (1970 Reg. Sess.) chaptered as Stats. 1970, ch. 1301, §§ 1, 2, pp. 2405-2406.) In an analysis of that legislation, the State Bar's legislative representative explained: "When there are consenting near-adults involved, but for some reason the girl's parents or the Social Welfare Department wants to force the boy to support the child, it is unrealistic to have the connotation of 'rape' attached to his crime. Many private employees do not differentiate between 'statutory rape' and 'forcible rape,' and refuse to hire a 'rapist.'[7] As a result, the capacity to earn money to support a child is severely handicapped. This bill merely seeks to eliminate this social stigma." (Harold F. Bradford, State Bar of Cal. Legis. Rep., analysis for Assem. Com. on Criminal Procedure of Sen. Bill No. 497 (1970 Reg. Sess.), undated, p. 1.) Thus, in separating and renaming the offense of unlawful sexual intercourse, the Legislature sought to eliminate, for section 261.5 offenses, the social stigma associated with the rape label so that offenders could more readily obtain employment and support children conceived as a result of such intercourse. (*Ibid*.; Sen. Com. on Judiciary, analysis of Sen. Bill No. 497 (1970 Reg. Sess.); Sen. Beilenson, sponsor of Sen. Bill No. 497 (1970 Reg. Sess.), letter to Governor, Aug. 26, 1970.) This history confirms that the potential for pregnancy and parenthood has, in fact, influenced legislative decisionmaking regarding unlawful intercourse with minors.

Indeed, more than two decades later, the Legislature made explicit findings that "[i]llicit sexual activity between adult males and teenage or younger girls in this state is resulting in the nation's highest teenage pregnancy and birth rate," and that "[m]any of these adult males are repeat offenders who have fathered more

---

**7** Read in context, this sentence clearly meant to refer to private *employers*, not "private employees."

17

than one child by different teenage mothers, yet accept little or no responsibility for their actions or for the support of their children." (Stats. 1996, ch. 789, § 2, subd. (a), p. 4161.) Emphasizing that "California spent $3.08 billion in 1985 to assist families headed by teenagers," but "would have saved $1.23 billion in welfare and health care expenses" had parenthood been delayed, the Legislature declared that "[t]he laws prohibiting adults from having sexual relations with persons under the age of 18 years must be more vigorously enforced," and that "[a]dult males who prey upon minor girls must be held accountable for their conduct and accept responsibility for their actions." (*Id.* at §2, subds. (b), (c), p. 4161.) Based on these findings, the Legislature amended section 261.5 to subject adults convicted of sexual intercourse with minors to graduated civil penalties (ranging from $2,000 to $25,000), based on the age difference between the minor victim and the adult offender. (§ 261.5, subd. (e)(1).) Any amounts so recovered must be applied toward recouping the costs in pursuing the penalties, with the remainder deposited in the Underage Pregnancy Prevention Fund. (§ 261.5, subd. (e)(2).) These civil penalties are not applicable to persons convicted of offenses involving sexual contact other than intercourse with minor victims.

Hence, the very real problem of teen pregnancy and its costly consequences, as well as legislative concern that stigmatization might interfere with employment opportunities and the support of children conceived as a result of unlawful intercourse, offer more than just plausible bases for treating section 261.5 offenders differently than other types of sex offenders. Providing for discretion in section 261.5 cases allows the trial court to order registration in appropriate situations, while maintaining flexibility in those cases where, for instance, registration might cause economic or other hardship to a child born to the minor victim and the adult offender.

18

Additionally, as *Hofsheier* acknowledged, the Legislature, on at least three separate occasions up to that point, specifically considered, and ultimately rejected, proposed amendments that would have imposed mandatory registration for section 261.5 offenders. (*Hofsheier*, *supra*, 37 Cal.4th at p. 1206.) For instance, in 1997 a bill was introduced that would have amended section 290 to add section 261.5 to the list of offenses subject to mandatory lifetime registration. (Assem. Bill. No. 1303 (1997-1998 Reg. Sess.), as introduced Feb. 28, 1997.) In considering this bill, the Legislature expressly questioned whether extending the requirement to section 261.5 offenders might have negative repercussions when voluntary intercourse between individuals in a relationship results in the birth of a child. (Assem. Com. on Public Safety, Analysis of Assem. Bill. No. 1303 (1997-1998 Reg. Sess.) as amended Apr. 16, 1997, p. 4 ["How many teen[] mothers would want the father of their child to plead guilty of statutory rape and be subject to a life time registration requirement?"].)

Subsequent to *Hofsheier*, and to this day, the Legislature has not acted to add section 261.5 to section 290's list of offenses subject to mandatory registration. Because the Legislature has acted purposefully and consistently to preserve discretionary sex offender registration for section 261.5 offenders, we may reasonably infer its public policy concerns would not be served by mandating registration for such offenders in order to cure the constitutional infirmity found by *Hofsheier*.

In rejecting the potential for pregnancy as a legitimate reason for differentiated treatment of intercourse offenders, *Hofsheier* observed that "persons convicted of voluntary oral copulation . . . may have also engaged in intercourse (whether they were convicted of it or not) and a pregnancy may have resulted." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1205.) There appears, however, no legal authority suggesting that the same registration consequences are constitutionally

19

required because certain defendants might at times commit both offenses with the same victims.[8]

Finally, "[w]hen conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made." (*Turnage*, *supra*, 55 Cal.4th at p. 77.) "A classification is not arbitrary or irrational simply because there is an 'imperfect fit between means and ends' " (*ibid*., quoting *Heller*, *supra*, 509 U.S. at p. 321), or "because it may be 'to some extent both underinclusive and overinclusive' " (*Warden v. State Bar* (1999) 21 Cal.4th 628, 649, fn. 13, quoting *Vance v. Bradley* (1979) 440 U.S. 93, 108). Consequently, any plausible reason for distinguishing between oral copulation and intercourse for purposes of mandatory registration need not exist in every scenario in which the statutes might apply. It is sufficient that the oral copulation activity prohibited by section 288a(b) lacks the same inherent capacity to cause pregnancy as the sexual intercourse activity prohibited by section 261.5.

At bottom, the Legislature is afforded considerable latitude in defining and setting the consequences of criminal offenses. (*Turnage*, *supra*, 55 Cal.4th at p. 74; *People v. Wilkinson* (2004) 33 Cal.4th 821, 840.) In light of the legitimate purposes of sex offender registration, and the plausible and actual legislative concerns noted above, it cannot be said that the differentiated treatment of section

---

**8** In *Hofsheier*, as here, nothing indicated the defendant engaged in intercourse with his victim. However, if a person were to engage in both oral copulation and unlawful intercourse with a minor, the district attorney would have discretion to prosecute that person for either or both crimes. An exercise of such discretion generally does not violate equal protection, and even without *Hofsheier*, a person who committed both offenses with the same victim could establish an equal protection violation upon a showing that he or she was singled out deliberately for prosecution on the basis of some invidious criterion and that the prosecution would not have been pursued except for the discriminatory purpose. (See *Manduley v. Superior Court*, *supra*, 27 Cal.4th at pp. 568-570.)

261.5 and section 288a offenders "so lack[s] rationality" that it constitutes "a constitutionally impermissible denial of equal protection." (*New Orleans v. Dukes* (1976) 427 U.S. 297, 305.)[9]

Accordingly, we hereby overrule *People v. Hofsheier*, *supra*, 37 Cal.4th 1185, to the extent it is inconsistent with the views expressed herein. We also disapprove those Court of Appeal decisions that applied *Hofsheier*'s rationale — i.e., the absence of a rational basis for distinguishing, as to sex offender registration, between oral copulation with a minor and unlawful sexual intercourse — to other sex offenses involving minors and others. (E.g., *People v. Ruffin*, *supra*, 200 Cal.App.4th at pp. 673-675; *People v. Thompson*, *supra*, 177 Cal.App.4th at pp. 1430-1431; *Luansing*, *supra*, 176 Cal.App.4th at p. 685; *Ranscht*, *supra*, 173 Cal.App.4th at p. 1375; *In re J.P.*, *supra*, 170 Cal.App.4th at pp. 1299-1300; *People v. Hernandez*, *supra*, 166 Cal.App.4th at pp. 648-651; *People v. Garcia*, *supra*, 161 Cal.App.4th pp. 481-482.)

### D.  Effect of Overruling *Hofsheier*

Inasmuch as Johnson's claim for relief rests entirely on *Hofsheier*, we conclude, with respect to his section 288a(b)(2) conviction, that there is no violation of his federal and state constitutional rights to equal protection of the laws in the ongoing requirement that he register as a sex offender pursuant to

---

[9]    The dissent makes no attempt to demonstrate that Johnson has negated " 'every conceivable basis' " that might support the challenged statutory disparity. (*Heller*, *supra*, 509 U.S. at p. 320; see *Turnage*, *supra*, 55 Cal.4th at p. 75.) Instead, the dissent's defense of *Hofsheier* rests largely on media and law review articles suggesting that sections 288a, 286, and 290 were intended to discriminate against homosexuals and in the past were discriminatorily enforced in such a manner. We note that 27-year-old Johnson committed his sex offense against a girl under 16 years of age and has made no claim that section 290, which has always been neutral on its face, violates equal protection because of a supposedly disparate impact on homosexuals.

section 290.  The question remains whether or not retroactive application of the instant decision is appropriate under the circumstances here.

A decision of a court overruling a prior decision is typically given full retroactive effect.  (*Barber v. State Personnel Bd.* (1976) 18 Cal.3d 395, 400.)  Despite this general rule, the federal and state Constitutions do not prohibit an appellate court from restricting retroactive application of an overruling decision on grounds of equity and public policy.  (*Forster Shipbldg. Co. v. County of L.A.* (1960) 54 Cal.2d 450, 458-459; see *Woods v. Young* (1991) 53 Cal.3d 315, 330; accord, *Great Northern Ry. v. Sunburst Co.* (1932) 287 U.S. 358, 364-365.)[10]

We see no reason to deny retroactive application where, as here, a sex offender has taken no action in justifiable reliance on the overruled decision.  (Cf. *Claxton v. Waters* (2004) 34 Cal.4th 367, 378-379.)  It was in 1990 that Johnson pleaded guilty to one count of violating section 288a(b)(2) by engaging in oral copulation of a minor under 16 years of age.  As part of that plea, Johnson initialed

---

[10]    As respondent observes, sex offender registration is not punishment (*In re Alva* (2004) 33 Cal.4th 254, 268), and a person may be required to register for crimes that were committed before they became offenses subject to registration (*People v. Castellanos* (1999) 21 Cal.4th 785, 788 (lead opn. of George, C.J.); *id.* at p. 800 (conc. & dis. opn. of Kennard, J.)).  As for offenders who entered plea agreements, "the general rule in California is that a plea agreement is ' "deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy." ' " (*Doe v. Harris* (2013) 57 Cal.4th 64, 73.)  It therefore follows that "requiring the parties' compliance with changes in the law made retroactive to them does not violate the terms of the plea agreement, nor does the failure of a plea agreement to reference the possibility the law might change translate into an implied promise the defendant will be unaffected by a change in the statutory consequences attending his or her conviction." (*Id.* at pp. 73-74.)  Here, however, a legislative change in the law is not at issue.  Rather, this court is overruling a prior decision that featured a flawed constitutional analysis having binding legal effect.  Accordingly, we may assess whether equity and public policy favor nonretroactive application of today's decision.

and signed a declaration in which he acknowledged his obligation to register as a sex offender pursuant to section 290. *Hofsheier*, *supra*, 37 Cal.4th 1185, was decided in 2006. Clearly, Johnson's decision to plead and his obligation to register as a sex offender did not result from any reliance on the state of the law as this court articulated it in *Hofsheier*. In circumstances such as these, there is no unfairness or inequity in rejecting an equal protection challenge based on our overruling of *Hofsheier*.[11]

### CONCLUSION AND DISPOSITION

Contrary to the dissent's supposition, this case is not about whether discretionary registration would, or would not, be just as appropriate and effective in nonforcible oral copulation cases as the Legislature has deemed it to be in unlawful sexual intercourse cases. As explained above, the relevant issue is whether the statutory disparity mandating registration for oral copulation offenders (§§ 288a(b), 290), while affording trial court discretion for intercourse offenders (§§ 261.5, 290.006), has a rational basis.

---

[11] We need not and do not decide whether today's decision overruling *Hofsheier* should be given retroactive application in all cases.

Rather than perpetuate a flawed constitutional analysis that denies significant effect to section 290, we acknowledge that *Hofsheier* was wrong. Actual and plausible legislative concerns regarding recidivism, teen pregnancy, and the support of children conceived as a result of intercourse provide a rational basis for the difference in registration consequences as between those convicted of unlawful intercourse and those convicted of nonforcible oral copulation. While this court will not condone unconstitutional variances in the statutory consequences of our criminal laws, rational basis review requires that we respect a statutory disparity supported by a reasonably conceivable state of facts. " ' "Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function." ' " (*FCC v. Beach Communications, Inc.* (1993) 508 U.S. 307, 315.)

We reverse the judgment of the Court of Appeal and remand the matter to that court for further proceedings consistent with the views expressed herein.

**BAXTER, J.***

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**ELIA, J.P.T.****

---

* Retired Associate Justice of the Supreme Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

** Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## DISSENTING OPINION BY WERDEGAR, J.

Because the majority, as I explain, unnecessarily overrules this court's precedent in *People v. Hofsheier* (2006) 37 Cal.4th 1185 (*Hofsheier*), I respectfully dissent.

Petitioner, convicted of oral copulation with a person under 16 years of age (Pen. Code, § 288a, subd. (b)(2)), [1] claims he has been denied equal protection of the law because his oral copulation conviction subjects him to mandatory registration as a sex offender under section 290. Had he instead had sexual intercourse with the victim, petitioner contends, he would have committed a violation of section 261.5, subdivision (d) (unlawful sexual intercourse with person under 16 by person 21 or older), an offense not subject to mandatory registration under section 290. (See *Hofsheier*, *supra*, 37 Cal.4th at pp. 1192–1193 [finding an equal protection violation as to a defendant convicted of oral copulation with a 16 year old].)

We granted review to decide whether *Hofsheier*'s holding applies to defendant, who the record indicates was 27 years old at the time of his offense and thus potentially subject to prosecution under section 288, subdivision (c)(1), a mandatory registration offense, regardless of which sexual act he performed. We

---

[1]     All further unspecified statutory references are to the Penal Code.

later asked the parties to brief the question of whether this court should overrule its decision in *Hofsheier.*

The majority decides *Hofsheier* should be overruled. I disagree.

As I will explain (see pt. II., *post*), *Hofsheier*'s holding rests on a sound equal protection analysis. Our registration law establishes a statutory discrimination between oral copulation and sexual intercourse, in which those who commit the former act with minors but without the use of force are uniformly subject to mandatory lifetime registration as sex offenders under section 290, while those who commit the latter act with minors but without the use of force are required to register only in the discretion of the trial court under section 290.006. This discrimination does not rest on a rational ground of legislative distinction but is an anachronistic holdover from a period (before 1975, when California laws on consensual adult sex acts were liberalized) when oral copulation and sodomy were regarded as abhorrent sexual perversions closely associated with homosexuality and were therefore outlawed regardless of the participants' ages.

Since 1975 the Legislature has, as the majority discusses, considered and rejected bills making unlawful sexual intercourse (§ 261.5) a mandatory registration offense under section 290 (maj. opn., *ante*, at p. 19). Of significance, however, is that the Legislature does not appear to have reconsidered its preliberalization comparative determination that all oral copulation with minors regardless of the circumstances requires lifetime registration, while sexual intercourse with minors requires registration only in the discretion of the sentencing court. Viewed in historical perspective, the statutory distinction in treatment between section 288a offenders and section 261.5 offenders does not rest on a " 'realistically conceivable' " legitimate purpose; to speculate on possible bases, as the majority does, is merely to "invent[] fictitious purposes that could not

2

have been within the contemplation of the Legislature." (*Fein v. Permanente Medical Group* (1985) 38 Cal.3d 137, 163 (*Fein*).)

Clearly, a majority of the justices sitting on this case would not reach the same constitutional conclusion as did the court nine years ago in *Hofsheier*, *supra*, 37 Cal.4th 1185. But under the doctrine of stare decisis our precedent is nonetheless binding, absent extraordinary circumstances. Here we have no cause to depart from stare decisis and many reasons to adhere to our precedent. The majority posits no adequate grounds for overruling *Hofsheier*, a recent precedent that has engendered no widespread criticism or confusion, that has been relied on by those subject to registration under section 290, and that has afforded trial courts the flexibility to forgo ordering registration in circumstances where it would be unjust and counterproductive.

## I. Stare Decisis

"It is, of course, a fundamental jurisprudential policy that prior applicable precedent usually must be followed even though the case, if considered anew, might be decided differently by the current justices. This policy, known as the doctrine of stare decisis, 'is based on the assumption that certainty, predictability and stability in the law are the major objectives of the legal system; i.e., that parties should be able to regulate their conduct and enter into relationships with reasonable assurance of the governing rules of law.' " (*Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 296 (*Moradi-Shalal*).) The doctrine is not applied rigidly, of course, and does not prevent a court from correcting its errors, especially when the prior decision's errors relate to a matter of continuing concern. (*Id.* at pp. 296–297.) In particular, "reexamination of precedent may become necessary when subsequent developments indicate an

3

earlier decision was unsound, or has become ripe for reconsideration." (*Id.* at p. 297.)

In *Moradi-Shalal*, we concluded considerations of stare decisis did not warrant continuing to follow our then recent decision in *Royal Globe Ins. Co. v. Superior Court* (1979) 23 Cal.3d 880, which had held certain private causes of action for unfair claims practices were authorized by provisions of the Insurance Code. Examining events following the decision in *Royal Globe*, we found that courts in 17 states had expressly or implicitly rejected its holding (*Moradi-Shalal*, *supra*, 46 Cal.3d at p. 297) and that a "disturbing" number of scholarly writers had criticized the decision (*id.* at p. 299), suggesting it had had "adverse social and economic consequences" (*id.* at p. 301). We further noted that "the lower courts have experienced considerable difficulty in attempting to define the scope of the *Royal Globe* cause of action" and that as a consequence "we have granted review in approximately 25 other cases raising a variety of *Royal Globe* issues and reaching a variety of conflicting conclusions." (*Moradi-Shalal*, *supra*, 46 Cal.3d at p. 303; see *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1176–1178 [detailing criticism by courts and commentators of decision to be overruled and difficulty of courts in applying the precedent]; *Freeman & Mills, Inc. v. Belcher Oil Co.* (1995) 11 Cal.4th 85, 98– 102 [describing extensive judicial and academic criticism of decision to be overruled].)

No similar circumstances pertain to our decision in *Hofsheier*, *supra*, 37 Cal.4th 1185. Since its release in 2006, *Hofsheier* has not been the subject of criticism from either judicial or academic sources. As discussed below, several California Court of Appeal decisions have distinguished *Hofsheier* and declined to apply it to new circumstances, but no decision by a federal or sister-state court has

criticized it or declined to adopt its holding, and no law review article has addressed it critically. The direct commentary has been positive[2] or neutral.[3]

Although some questions have arisen in applying *Hofsheier*'s holding, the majority exaggerates their significance, for none poses intractable logical dilemmas or threats to doctrinal coherence. After resolving a key procedural issue

---

[2]  See Strader, *Lawrence's Criminal Law* (2011) 16 Berkeley J. Crim. L. 41, 92–93 and footnote 285 (*Hofsheier* is analogous to *State v. Limon* (2005) 280 Kan. 275, which correctly held (in the article's words) that "maintaining heterosexuality as the governing norm is not a rational basis for discrimination"); Comment, *The Present Case* Does *Involve Minors: An Overview of the Discriminatory Effects of Romeo and Juliet Provisions and Sentencing Practices on Lesbian, Gay, Bisexual, and Transgender Youth* (2011) 20 Law & Sexuality 97, 111 (applauding *Hofsheier* for recognizing that "[e]ven a 'minor exception' [to *Lawrence v. Texas* (2003) 539 U.S. 558] cannot justify discriminatory laws"); Comment, *Are Bills of Attainder the New Currency? Challenging the Constitutionality of Sex Offender Regulations That Inflict Punishment Without the "Safeguard of A Judicial Trial"* (2010) 37 Pepperdine L.Rev. 1301, 1325 and footnote 141 (*Hofsheier* is an example of a court appropriately protecting the constitutional rights of sex offenders); Comment, *Romeo and Romeo: Coming Out from Under the Umbrella of Sexual Abuse* (2009) 8 Whittier J. Child & Fam. Advoc. 237, 252 (*Hofsheier* exemplifies principle that "[t]reating such sexual conduct between minors of the same or similar age differently on the basis of whether the sexual conduct has the capacity to be procreative violates [equal protection]").

[3]  Gong and Shapiro, *Sexual Privacy After* Lawrence v. Texas (2012) 13 Geo. J. Gender & L. 487, 504 (whether an equal protection violation can be found when, as in *Hofsheier*, "the distinction is between two different sex acts, both committed heterosexually . . . is likely to be an area for further legal development in the near future" (fn. omitted)); Note, People v. Hofsheier*, 37 Cal.4th 1185 (2006)* (2007) 34 W.St.U. L.Rev. 307, 312 (ambivalently observing that *Hofsheier* "vindicates some of the justifiable rights of sex offenders that are sadly circumvented by the courts" and represents a step by this court "toward losing some of its more archaic rules and codified beliefs" but that "[i]t remains to be seen" whether the court's resolution of an issue on which the Legislature has not pronounced "is advisable").

in *People v. Picklesimer* (2010) 48 Cal.4th 330, we have found no decisional conflict or conundrum that called for our review until the instant case, for which we have granted and held four additional cases. (Cf. *Freeman & Mills, Inc. v. Belcher Oil Co.*, *supra*, 11 Cal.4th at p. 97 [confusion generated by decision to be overruled is so great that resolving it would involve a "Herculean" effort].)

Nor is there any reason to suppose *Hofsheier*'s social effects have been adverse. (Cf. *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.*, *supra*, 55 Cal.4th at p. 1177 [decision to be overruled tends to further fraudulent practices]; *Freeman & Mills, Inc. v. Belcher Oil Co.*, *supra*, 11 Cal.4th at p. 102 [decision to be overruled creates potential for excessive tort damage awards]; *Moradi-Shalal*, *supra*, 46 Cal.3d at p. 301 [decision to be overruled tends to promote multiple litigation, inflate insurance settlements and raise insurance costs].) To the contrary, giving trial courts the discretion to forgo ordering registration for those convicted of oral copulation with 16 and 17 year olds appears to have social benefits, permitting prosecutors and courts to avoid unnecessarily imposing lifetime stigma and restricted liberty on nonpredatory offenders and giving greater equality of treatment to those with same-sex sexual partners. To overrule our decision in *Hofsheier*, *supra*, 37 Cal.4th 1185, without compelling grounds defeats the public expectation that the court will generally act, where possible within the law, to maintain or increase fairness and equality in the law.

Registration under section 290 carries with it not only the onerous lifetime registration requirements themselves, but also significant stigma and severe restrictions on residence choice. *Hofsheier* allows relief from these strictures for an offender who, from the circumstances of the offense and the personal history of the offender, the court in its discretion considers to be nonpredatory and at low risk of committing future sex offenses. Prosecutors and the courts may thus avoid

6

stigmatizing and stunting the personal and economic lives of those nonpredatory offenders who engaged in oral sex within consensual intimate relationships with minors (both same sex and opposite sex) and have already served their sentences, in some cases many years ago.

Under *Hofsheier*, *supra*, 37 Cal.4th 1185, for example, a man convicted decades ago at age 19 of oral sex with his 17-year-old girlfriend, now his wife, could seek relief from mandatory registration. (See *California Supreme Court to Weigh Sex Offender Registration,* S.F. Daily J. (Feb. 18, 2014) p. 1.) Under today's decision overruling *Hofsheier*, he cannot. Under *Hofsheier*, a 23-year-old woman who had a month-long sexual relationship with a 15-year-old girl, and who the trial court said had learned from her mistake — noting that "I don't believe we are ever going to see you in a situation again where you are engaging in sexual relationships or relations with children" — would be able to seek relief from mandatory registration.[4] Under today's decision, she cannot, but instead must continue to register as a sex offender for the rest of her life. Under *Hofsheier*, a man who, when he was 12 years old, called child protective services to report his own sexual conduct with his younger brother and later admitted a violation of section 288a, could seek relief from mandatory registration. (*In re J.P.* (2009) 170 Cal.App.4th 1292.) Under today's decision, he cannot, and must register as a sex offender for the rest of his life, living with both the public stigma of being branded a sex offender and the severe residential restrictions California law places on those required to register. (See § 3003.5, subd. (b).)

Giving trial courts discretion to forgo ordering registration also tends to alleviate the overinclusiveness that has plagued California's registration system.

---

[4] These facts arose in a California case discussed in an unpublished appellate decision, which under California Rules of Court, rule 8.1115 may not be cited.

7

Unlike most states with sex offender registration, California requires lifetime registration for all qualifying offenders.  Partly for this reason, we have the largest number of registrants in the nation – about 76,000 outside of prisons and jails.  (Cal. Sex Offender Management Bd., *A Better Path to Community Safety:  Sex Offender Registration in California* (2014) p. 3 (*A Better Path*); Cal. Sex Offender Management Bd., *Recommendations Report* (Jan. 2010) p. 50.)  Having so many offenders on the rolls makes it difficult for law enforcement to effectively supervise those who present the greatest public danger:  "In this one-size-fits-all system of registration, law enforcement cannot concentrate its scarce resources on close supervision of the more dangerous offenders or on those who are at higher risk of committing another sex crime."  (Cal. Sex Offender Management Bd., *Recommendations Report*, *supra*, p. 50.)  As the public board charged with evaluating and improving the state's treatment of sex offenders in the community recently concluded, "California policy makers need to rethink the registration laws because society is actually better protected when attention is focused on those who truly present a risk while very low-risk sex offenders are permitted to develop stable lifestyles and move forward with their lives." (*A Better Path*, *supra*, at p. 5, boldface omitted.)  Though *Hofsheier* rested, of course, on constitutional rather than policy grounds, our holding improved the system by giving trial courts discretion over registration of those convicted under section 288a.  Today's decision unnecessarily reverses that small step toward reform.

Overruling *Hofsheier*, *supra*, 37 Cal.4th 1185, also creates potentially substantial risks to individuals who have relied on our decision and will no doubt engender new litigation to settle questions of its application.  In the nine years since *Hofsheier* was filed, an unknown number of offenders convicted of violating section 288a have been released into society without orders to register as sex offenders, or have been relieved of their prior registration obligations through writ

8

proceedings. The possible consequences for them of *Hofsheier*'s overruling are unclear. What will be their potential liability for failure to comply with the law's strict time-limited registration requirements in the interim? (See §§ 290.012, 290.013 [setting short deadlines for registration annually and upon change of residence].)

In their briefing, the People acknowledge that some form of notice will be necessary before a person who, after *Hofsheier*, was not required to register or who successfully petitioned for relief from mandatory registration could be convicted of the willful failure to register. (§ 290.018, subds. (a), (b).) Left unanswered is whether the California Department of Justice, which administers the registration system, has the means to identify such new or renewed registrants or to reach all those persons who are identified with adequate notice. Also unclear is what form of notice will suffice to allow prosecution for willful failure to register. In *People v. Garcia* (2001) 25 Cal.4th 744, 752–754, we held a conviction for that offense requires proof of *actual knowledge* of the registration requirement. Presumably, then, the Department of Justice will attempt to obtain some form of acknowledgement from recipients that they have received and read the notice of *Hofsheier*'s overruling. (See *Garcia*, *supra*, at p. 755 [failure to instruct jury on knowledge requirement harmless where jury necessarily found the defendant, on release from incarceration, read and signed form telling him of registration requirements].) To the extent the notice even reaches unincarcerated nonregistrants, however, many are likely to refrain from signing and returning it, leaving unclear their criminal liability under section 290.018, subdivision (a) or (b). (See also § 290.018, subd. (j) [punishing as a misdemeanor, without any express requirement of willfulness, "the failure to provide information required on registration and reregistration forms of the Department of Justice"].)

9

Uncertainty also surrounds the consequences of today's decision on allowable residences for those now required to register.  If such an offender has acquired or returned to a residence that is unlawful for persons required to register (see § 3003.5, subd. (b)), will the offender have to immediately move out, and will he or she be liable for a violation of section 3003.5 for any time spent in a prohibited residence?  Section 3003.5 does not by its terms require willfulness or knowledge of the residency limitations or of one's registration requirement; with *Hofsheier* overruled, therefore, section 288a offenders who, since that decision, have acquired or returned to a noncompliant residence may face criminal liability regardless of their lack of notice or knowledge.  And criminal liability aside, they could face significant economic and personal hardship in having to uproot themselves and their families to seek compliant housing.

As the majority seemingly acknowledges, defendants may also have relied on *Hofsheier* by agreeing, in plea negotiations, to plead to offenses that do not carry mandatory registration under that decision or its progeny.  (Maj. opn., *ante*, at pp. 22–23.)  The majority opinion leaves open whether and how such defendants may obtain relief, either from the newly imposed registration requirement or from their convictions.  In this respect as well, today's decision is likely to be a fertile source of doubt and litigation.

In an area of the law where the application of burdensome lifetime restrictions on liberty, enforceable by additional criminal sanctions (§ 290.018), depends on our decisions, stability would seem of the highest importance.  In this area of law, we should not overrule our precedents without the most compelling cause.  No such cause is present here.

10

## II.  The Merits of *Hofsheier*'s Holding

Section 290 requires persons convicted of specified sex offenses to register with law enforcement agencies as sex offenders periodically and for the rest of their lives.  Persons convicted of nonspecified crimes may also be required to register, in the discretion of the trial court, on findings that the offense was committed out of sexual compulsion or for sexual gratification and that the circumstances weigh in favor of ordering registration.  (§ 290.006; *Hofsheier*, *supra*, 37 Cal.4th at p. 1197.)  As relevant here, subdivision (c) of section 290 lists as offenses requiring mandatory registration all violations of section 288a (unlawful oral copulation), but not violations of section 261.5 (unlawful sexual intercourse with minor).

In *Hofsheier*, the defendant had engaged in voluntary oral copulation[5] with a 16-year-old girl.  Convicted by plea of violating section 288a, subdivision (b)(1), he was granted probation and ordered to register as a sex offender.  (*Hofsheier*, *supra*, 37 Cal.4th at p. 1193.)  On appeal, the defendant claimed the unequal treatment of oral copulation and sexual intercourse violated his constitutional rights.  (*Id.* at p. 1194.)  As we explained, "[i]f defendant here, a 22-year-old man, had engaged in voluntary sexual intercourse with a 16-year-old girl, instead of oral copulation, he would have been guilty of violating section 261.5, subdivision (c), but he would not face mandatory sex offender registration."  (*Id.* at p. 1195.)

To assess Hofsheier's equal protection claim, we first asked whether he was similarly situated to a class of people the Legislature has not subjected to

---

[5]     The *Hofsheier* court used "voluntary" in the restricted sense of willing participation without aggravating circumstances such as the use of force or duress or commission of the act while the victim is unconscious or intoxicated. (*Hofsheier*, *supra*, 37 Cal.4th at p. 1193, fn. 2.)  I will follow that usage here as well.

mandatory registration, those convicted of unlawful sexual intercourse under section 261.5. (*Hofsheier*, *supra*, 37 Cal.4th at p. 1199.) Although his conviction was for unlawful oral copulation, we held that the likeness of the sexual acts situated the defendant similarly to a person who committed unlawful sexual intercourse. "The only difference" between the defendant's offense, which required registration, and unlawful sexual intercourse, which did not, was "the nature of the sexual act." (*Id.* at p. 1200.) As the majority opinion leaves this aspect of *Hofsheier* undisturbed (maj. opn., *ante*, at p. 13), I also do not dwell on it here.

In the second part of our analysis in *Hofsheier*, we evaluated possible grounds for the Legislature's distinction, as to sex offender registration, between the offenses of voluntary oral copulation with a minor and unlawful sexual intercourse with a minor the same age. Finding no rational basis for the difference in treatment, we held section 290's registration mandate unconstitutional as to those convicted, under section 288a, subdivision (b)(1), of voluntary oral copulation with minors 16 to 17 years old. (*Hofsheier*, *supra*, 37 Cal.4th at pp. 1201–1207.) Because the defendant remained subject to discretionary registration, we remanded for a determination by the trial court on that issue. (*Id.* at pp. 1208–1209.)

Recognizing the Legislature's broad discretion in forming criminal justice policy, this court generally has applied a deferential rational-relationship test — whether the challenged classification bears a rational relationship to a legitimate state purpose — to statutory distinctions in the consequences of different offenses. (*People v. Turnage* (202) 55 Cal.4th 62, 74; *People v. Wilkinson* (2004) 33 Cal.4th 821, 837–838.) We adhered to that approach in *Hofsheier*, framing the issue as "whether there is a rational basis for the statutory classification requiring lifetime registration as a sex offender by a person, such as defendant, convicted of

voluntary oral copulation with a 16-year-old girl but not of a person convicted of voluntary sexual intercourse with a minor of that age." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1201.)

Elucidating the scrutiny involved, we repeated (*Hofsheier*, *supra*, 37 Cal.4th at pp. 1200–1201) the oft-quoted formula that legislation subject to rational basis scrutiny "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." (*FCC. v. Beach Communications, Inc.* (1993) 508 U.S. 307, 313; see *Kasler v. Lockyer* (2000) 23 Cal.4th 472, 482; *Warden v. State Bar* (1999) 21 Cal.4th 628, 644.) At the same time, we highlighted the respects in which rational basis review, deferential as it is, nevertheless requires real scrutiny of the relationship between a classification and the possible legislative goals. We have described the necessary inquiry into that relationship as a serious and genuine one, in which the court seeks plausible reasons for the classification, resting on a reasonably conceivable factual basis. (*Hofsheier*, *supra*, 37 Cal.4th at p. 1201; see *Warden v. State Bar*, *supra*, at pp. 647–648.) The statutory purpose by which the classification is justified must be realistically conceivable — the reviewing court does not " ' "invent[ ] fictitious purposes that could not have been within the contemplation of the Legislature . . . ." ' " (*Hofsheier*, *supra*, at p. 1201.) And while the Legislature may rationally address a problem " 'in less than comprehensive fashion by "striking the evil where it is felt most" [citation], its decision as to where to "strike" must have a rational basis in light of the legislative objectives.' " (*Id.* at p. 1206, fn. 8, quoting *Hays v. Wood* (1979) 25 Cal.3d 772, 791.)

The sex offender registration scheme is intended to ensure that such offenders, considered likely to recommit sex offenses, are available for police surveillance and, in the scheme's modern form, "to notify members of the public

13

of the existence and location of sex offenders so they can take protective measures." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1196.)  In briefing *Hofsheier*, the People asserted two possible grounds for section 290's distinction between adults convicted of voluntary oral copulation with 16- or 17-year-old minors, who are subject to mandatory registration, and adults convicted of voluntary sexual intercourse with minors of that age, who are not subject to mandatory registration. First, the People argued the distinction could rest on a legislative belief that the former class (those convicted under § 288a) are more likely to repeat their offenses than the latter (those convicted under § 261.5). (*Hofsheier*, *supra*, at p. 1203.)  Second, the People asserted the legislative distinction could be justified by the possibility of pregnancy resulting from sexual intercourse, "because requiring the father to register as a sex criminal might stigmatize both the mother and the child, and might harm the father's ability to support his child." (*Id.* at p. 1205.)  These are the same rationales posited by the majority today. (Maj. opn., *ante*, at pp. 14–19.)

*Hofsheier*'s emphasis on a realistic assessment of the possible legislative purposes carried forward to its discussion, under the rational relationship standard, of these asserted bases.  The court observed that the individual variation in the risk of recidivism and the possibility of pregnancy were rational grounds for providing judicial discretion in registration *generally*, but not for providing such discretion selectively only as to those convicted under section 261.5, since persons convicted under section 288a also varied in their risk of recidivism and also may have had sexual intercourse with the victim, the two sex acts not being exclusive of one another. (*Hofsheier*, *supra*, 37 Cal.4th at pp. 1204–1205.)  More fundamentally, the *Hofsheier* court found the People's asserted grounds for the statutory distinction to be "at odds" with the history and structure of California's sex crimes laws. (*Id.* at p. 1206.)  Viewed realistically in light of those laws' historical

14

development, section 290's unfavorable treatment of oral copulation in comparison to sexual intercourse appears not as a rational distinction based on currently operative legislative views of the two offender classes, but rather "a historical atavism dating back to a law repealed over 30 years ago that treated all oral copulation as criminal regardless of age or consent." (*Hofsheier*, *supra*, at p. 1206.)

To understand *Hofsheier*'s reasoning on this point, and the limits that reasoning places on the decision's application, it helps to review the history referred to in more detail.

Our sex offender registration statute (§ 290) dates from 1947; then as now, the statute listed oral copulation (§ 288a) and sodomy (§ 286), but not sexual intercourse with a minor (then punished under § 261, former subd. 1), as registerable offenses. (Stats. 1947, ch. 1124, § 1, p. 2562.) Section 288a, however, was then a very different statute than it is now. Bearing the notation "Sex perversions," the enactment punished as a felony *all* oral copulation, even that occurring between consenting adults. (Stats. 1921, ch. 848, § 2, p. 1633.) Similarly, California's sodomy statute (former § 286), which dates to the 1872 Penal Code, punished anal sex as a felony, even between consenting adults. (See Stats. 1921, ch. 90, § 1, p. 87 [referring to the offense as "the infamous crime against nature"].) California was not exceptional in prohibiting acts of nonprocreative sex; writing in 1950, a legislative subcommittee studying sex crimes summarized American law thusly: "The law approves and recognizes only one method of sexual intercourse [¶] That method is the relationship between the sex organ of a man and the sex organ of a woman. Other practices of sexual gratification such as connections per anum or per os (mouth) are forbidden." (Assem. Interim Com. on Judicial System & Judicial Process, Preliminary Report

15

of the Subcom. on Sex Crimes (Mar. 8, 1950) Assem. J. (1950 1st Ex. Sess.) pp. 29, 45.)

The version of section 288a added in 1921 replaced a previous version enacted in 1915 (also to address "sex perversions"), which criminalized "[t]he acts technically known as fellatio and cunnilingus." (Stats. 1915, ch. 586, § 1, p. 1022; see *In re Lockett* (1919) 179 Cal. 581, 583–591 [holding this statute unconstitutional because the offense was defined by Latin terms having no definite meaning in the English language].) The 1915 law's enactment appears to have been spurred by a scandal involving arrests of homosexuals in Los Angeles and Long Beach. (See Scott, *Lust, Language, and Legislation: Long Beach, California 1914* (2010) 19 Ex Post Facto 93, 99–101.) In December of 1914, the Sacramento Bee published a series of articles lamenting the lack of an adequate criminal sanction for this "Vilest of All Offenses," a "debasing immorality, of practices between man and man, and man and boy" revealed by the Southern California scandals. (Campbell, *Legislature Should Enact Some Law to Punish This Most Debasing Practice*, Sacramento Bee (Dec. 21, 1914) p. 1; see Campbell, *Wide Spread of Debasing Practices Make Punitive Legislation A Necessity*, Sacramento Bee (Dec. 22, 1914) p. 1; Campbell, *Bee's Publicity Light on Great Vice of Day Shows Need of Punitive Measures*, Sacramento Bee (Dec. 24, 1914) p. 1.) The bill to make oral copulation a felony (Assem. Bill No. 219 (1915 Reg. Sess.)) was introduced on January 14, 1915, passed by both houses and signed by the Governor on June 1 of that year. The Bee promptly took credit for uncovering the " 'Sexual Perversions' " that the law was designed to suppress. (Scott, *Lust, Language, and Legislation: Long Beach, California 1914*, *supra*, 19 Ex Post Facto at p. 101, fn. 43.)

Sections 288a and 286 did not differentiate between adults of the same sex and those of opposite sexes in prohibiting the specified voluntary sex acts. The

16

statutes, however, were enforced largely against homosexual acts.  "One reason given for this significant disparity in enforcement is that deviant heterosexual conduct is not viewed with the same distaste as is homosexual conduct by the public."  (Comment, *Sexual Freedom For Consenting Adults — Why Not?* (1971) 2 Pac. L.J. 206, 214, fn. 49.)  Enforcement of the oral copulation and sodomy laws being nearly impossible as to voluntary acts between adults committed in private "[u]nless the parties are extremely careless" (*id.*, at p. 214), enforcement against consenting adults occurred mainly through surveillance in public places, notably bars, bathhouses and public restrooms frequented by homosexuals.  (*Ibid.*; see Gallo et al., *Project, The Consenting Adult Homosexual and the Law:  An Empirical Study of Enforcement and Administration in Los Angeles County* (1966) 13 UCLA L.Rev. 643, 689 (hereafter *The Consenting Adult Homosexual*).)  Thus it could be said, in the era before liberalization of the laws regarding consenting adults, that "the meaning of deviant sexual conduct in society is synonymous to homosexual conduct."  (Comment, *Sexual Freedom For Consenting Adults — Why Not?*, *supra*, 2 Pac. L.J. at p. 214.)

The use of sections 288a and 286 to punish "deviant" sex acts between consenting adults thus "sen[t] a clear message:  vaginal intercourse is the only morally acceptable form of penetrative sexual behavior. . . .  Deeply intimate sexual acts are only available to straight people.  Those straight people who engage in 'normal' sex can meet our moral strictures, as embodied in our laws, but *homosexuals never can*."  (Strader, *Lawrence's Criminal Law*, *supra*, 16 Berkeley J. Crim. L. at p. 77.)  Certainly, some members of the California judiciary understood the laws this way:  a Court of Appeal panel, rejecting constitutional challenges to section 288a, observed the defendant's arguments were those of "the congenital homosexual to whom that is natural which the vast majority of the

17

population deems unnatural." (*People v. Baldwin* (1974) 37 Cal.App.3d 385, 395.)

The requirement for registration as a sex offender played a significant role in enforcement of sections 288a and 286 against gay people. The 1966 UCLA Law Review study of enforcement practices found that police officers, when they had a choice of statutes under which to arrest gay men, consciously chose those offenses requiring registration, including sections 288a and 286, the "predominant view" being that "homosexual offenders should be registered." (*The Consenting Adult Homosexual*, *supra*, 13 UCLA L.Rev. at p. 737.) In interviews, officials gave various reasons for wanting to register homosexuals, including the beliefs that they were prone to commit forcible sex offenses or offenses against children and that requiring registration would discourage homosexual conduct. (*Id.*, at pp. 737–738.)

The 1975 bill amending sections 288a and 286 to eliminate criminal penalties for the specified acts between consenting adults (Assem. Bill No. 489 (1975–1976 Reg. Sess.)) was understood by the public, the bill's supporters and its opponents as an act to legalize homosexual conduct. The bill was informally dubbed the "homosexuals' bill of rights." (Gillam, *Assembly OK's Homosexuals' Bill of Rights*, L.A. Times (Mar. 7, 1975) p. A1.) Members of the Assembly spoke in favor of the bill on the grounds both that it would prevent unnecessary government interference with sexual privacy generally and "end the harassment of homosexuals," and against it on the ground that "oral copulation and sodomy are unnatural acts" and the bill would thus "sanction unnatural relationships." (*Assembly Passes Bill to Decriminalize Sex Acts*, L.A. Daily J. (Mar. 10, 1975) p. 3.) Outside opponents warned that under the bill "[h]omosexual activities and orgies in homes or apartments next to yours would be completely legal." (Woman's Christian Temperance Union of Southern Cal., Analysis of AB-489

(Apr. 1975) p. 2.) Supporters, while observing that the practices to be legalized were not limited to homosexuals, applauded the bill for removing that group's " 'outlaw' status" and as providing recognition that love and tolerance for our "homosexual neighbor[s]" is the legal position most consistent with contemporary Christian belief. (National Organization for Women, Los Angeles Chapter, letter to senators (Mar. 27, 1975) p. 3.)[6]

In contrast to the criminalization of oral sex and sodomy as perversions associated with homosexuality, *heterosexual* intercourse with pubescent minors, even when it violates the law, has often been viewed as proceeding from morally and psychologically normal impulses. In part, this reflects the mainstream commonality of adolescent heterosexual experience. "Historically devised to protect the innocence of youth, statutory rape laws continue in force today, even though most Americans admit to having their first sexual experience as teenagers . . . ." (Carpenter, *The Constitutionality of Strict Liability in Sex Offender Registration Laws* (2006) 86 B.U. L.Rev. 295, 309, fn. omitted.) Heterosexual intercourse with pubescent minors generally has not carried the labels of "unnatural," "depraved" and "perverted" applied to the sexual acts historically associated with homosexuality.

Indeed, as the majority notes (maj. opn., *ante*, at p. 17), when the prohibition on sexual intercourse with underage girls was removed from California's rape statute (§ 261) and designated as the new offense of "unlawful sexual intercourse" (§ 261.5), the principal goal was to eliminate the social stigma

---

[6] The materials cited in this paragraph are found in the legislative committee and caucus files retained from passage of the 1975 bill. They are cited here not to demonstrate the legislative intent in enacting the measure, which is not in doubt, but to illuminate the general understanding, inside and outside the Legislature, of the bill's social effect.

19

of labeling offenders "rapists."  While one bill analysis ties this goal specifically to enabling offenders to support a child conceived by the offense (Bradford, State Bar of Cal., analysis of Sen. Bill No. 497 (1970 Reg. Sess.), undated, p. 1 [analysis of State Bar's legislative representative, submitted to Assem. Com. on Criminal Procedure]), other legislative history refers more generally to "eliminat[ing] the social stigma attached to the term rapist" (Sen. Com. on Judiciary, Bill Analysis Work Sheet for Sen. Bill No. 497 (1970 Reg. Sess.) and helping offenders obtain employment by "eliminat[ing] the social stigma which arises when the distinction between forcible rape and intercourse with a consenting female minor is not made" (Sen. Beilenson, sponsor of Sen. Bill No. 497 (1970 Reg. Sess.), letter to Governor, Aug. 26, 1970).

What is clear is that even in 1970, when all oral copulation was still banned as a sexual perversion, sexual intercourse with a minor was deemed unworthy of social stigma.  The difference in attitude towards oral copulation and sexual intercourse reflected in section 290's differential registration requirement is thus a continuation of historical attitudes:  while sexual intercourse with minors was an offense, the act itself was a normal one not considered deserving of any social stigma; oral copulation, in contrast, was an unnatural act typically engaged in by homosexuals.

More recently, the decriminalization of adult consensual sex acts and the enactment of section 261.5, relating to adult sexual intercourse with a minor, have led to greater consistency in our statutes on voluntary sex acts with minors.  For example, each of the principal statutes now provides greater punishment for nonforcible acts with younger minors and for when there is a greater age gap between the participants.  (See §§ 261.5, subds. (b), (c), (d), 286, subds. (b)(1), (2), (c)(1), 288a, subds. (b)(1), (2), (c)(1).)

20

One significant difference in treatment nonetheless persists from the period before liberalization: those convicted of violating sections 288a and 286 are automatically required by section 290 to register as sex offenders for their entire lives; those convicted of violating section 261.5 are not. Although the premise that acts outlawed in sections 288a and 286 are unnatural perversions has been discarded, fatally undermining the former "predominant view . . . that homosexual offenders should be registered" (*The Consenting Adult Homosexual*, *supra*, 13 UCLA L.Rev. at p. 737), the mandatory registration requirement applicable to these particular sex acts remains on the books, a vestige of bygone social and legal discrimination. It is in this sense that we have termed the distinction drawn in section 290 between unlawful sexual intercourse and oral copulation "a historical atavism." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1206.)

Even under deferential rational basis review, justifications for legal discrimination "must find some footing in the realities of the subject addressed by the legislation." (*Heller v. Doe* (1993) 509 U.S. 312, 321; accord, *People v. Turnage*, *supra*, 55 Cal.4th at p. 75 [recognizing that "the realities of the subject matter cannot be completely ignored" under rational basis review].) The statutory distinction must be rationally related to a " 'realistically conceivable' " legislative purpose; the court is not to "invent[] fictitious purposes that could not have been within the contemplation of the Legislature." (*Fein*, *supra*, 38 Cal.3d at p. 163; accord, *Warden v. State Bar*, *supra*, 21 Cal.4th at p. 648.) In rejecting the People's recidivism and pregnancy rationales for differentiating between sections 261.5 and 288a, the *Hofsheier* court did no more than analyze section 290's distinction in mandatory registration in light of the historical realities of California sex crime law and decline to invent purposes that, from the historical record, the Legislature could not have contemplated. (*Fein*, *supra*, at p. 163; see *People v. Sage* (1980) 26 Cal.3d 498, 507–508 [as proposed grounds for distinction in

21

presentence conduct credits apply equally to both classes compared, the distinction "was not based on the grounds proposed" and fails rational basis test]; *Brown v. Merlo* (1973) 8 Cal.3d 855, 865, fn. 7 ["Although by straining our imagination we could possibly derive a theoretically 'conceivable,' but totally unrealistic, state purpose that might support this classification scheme, we do not believe our constitutional adjudicatory function should be governed by such a highly fictitional approach to statutory purpose."].)

Careful attention to whether a posited reason is plausible and realistic is particularly appropriate here given that our registration law's differential treatment of oral copulation and sexual intercourse has origins in irrational homophobia, continues to impact gay people in a differentially harsh way (as those in a same-sex relationship cannot plead to the discretionary registration offense of unlawful sexual intercourse) and involves severe restrictions on liberty and privacy. (See *People v. Barrett* (2012) 54 Cal.4th 1081, 1148 (conc. & dis. opn. of Liu, J.) [statutory discrimination may rest on irrational prejudice, and demand less-superficial scrutiny despite lack of present animus, where legislation "arise[s] from good faith adherence to unexamined assumptions that reflect historic or prevailing attitudes"]; cf. *Hunter v. Underwood* (1985) 471 U.S. 222, 233 [Ala. law disenfranchising certain ex-convicts is racially discriminatory, regardless of any modern justification that could be posed, where "its original enactment was motivated by a desire to discriminate against blacks on account of race and the section continues to this day to have that effect."].) We should hesitate to approve a statutory discrimination that may still bear the taint of irrational prejudice against homosexuals. (See *In re Marriage Cases* (2008) 43 Cal.4th 757, 841 [additional scrutiny of classification warranted in part by history of hostility and stigma experienced by homosexuals as a group].)

22

With the shift in attitudes toward oral sex and homosexuality represented by the 1975 decriminalization of consensual adult conduct, a reevaluation of section 288a's listing in section 290 would have been appropriate, i.e., should all those convicted of oral sex with minors still be required to register, when those convicted of sexual intercourse with minors the same age are not required to do so? As far as revealed in *Hofsheier* or discovered in my research in this case, however, no such reevaluation occurred. Instead, the blanket registration requirement for section 288a offenders lay undisturbed in section 290, a relic of past homophobia and discarded ideas of sexual regulation. *Hofsheier* correctly held this does not constitute a rational basis for the statutory discrimination against section 288a offenders.

As rational bases for the statutory discrimination at issue, the majority posits the possibility oral copulation offenders are viewed as more likely to repeat their offenses than unlawful intercourse offenders and, particularly, the potential for pregnancy resulting from sexual intercourse but not from oral copulation. (Maj. opn., *ante*, at pp. 14–19.)

With regard to differential recidivism, the legislative view appears to be at odds with that postulated by the majority. In statutory findings quoted by the majority, the Legislature found that many men committing unlawful sexual intercourse with minors are " 'repeat offenders' " who " 'prey upon minor girls.' " (Maj. opn., *ante*, at pp. 17-18, quoting Stats. 1996, ch. 789, § 2, p. 4161.) Thus, contrary to the majority's supposition, the Legislature does not appear to rely on a low risk of recidivism to exempt section 261.5 offenders from mandatory registration. Rather, as shown above, the historical record shows oral copulation was disfavored in comparison with sexual intercourse because the former act was regarded as a perversion engaged in by homosexuals. The majority's hypothesis is

23

a "fictitious purpose[]" (*Fein*, *supra*, 38 Cal.3d at p. 163) at odds with the history of our sex crimes statutes.

The majority's claim that the Legislature omitted section 261.5 from the list of mandatory registration offenses out of concern for the well-being of children conceived through unlawful sexual intercourse with minors finds some support in the staff analysis of a 1997 bill proposing to add section 261.5 to the mandatory list. The analysis outlines, in a set of rhetorical questions, several reasons for maintaining judicial discretion in ordering registration, one of which relates to concern over parental support for children of unlawful intercourse: "How many persons convicted of statutory rape are recidivists? [¶] Will more cases go to trial instead of settled if a registration requirement is mandated? [¶] Out of all the statutory rapes that occur, how many victims would report the sex as nonconsensual? [¶] How many teen[] mothers would want the father of their child to plead guilty of statutory rape and be subject to a life time registration requirement?" (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1303 (1997–1998 Reg. Sess.) as amended Apr. 16, 1997, p. 4, capitalization omitted.) Though the considerations outlined are broader than a concern over parental support (whether economic or otherwise), that is certainly included.

Of greater importance for our purposes is that the 1997 bill to which this analysis relates merely proposed to list section 261.5 in section 290; it did not address the treatment of section 288a offenders. The cited history helps to explain why the Legislature has not subjected all section 261.5 offenders to mandatory registration, but it does not support the claim that the same considerations require a different treatment of all section 288a offenders as predators deserving of mandatory lifetime registration. Indeed, most of the bill analysis's reasons for allowing discretion in sex offender registration apply equally to those committing nonforcible oral copulation with a minor: such prohibited acts sometimes occur

24

voluntarily within mutual intimate relationships, a context that does not pose a high risk of recidivism, and allowing discretion in such cases would make defendants and prosecutors more likely to reach plea agreements in appropriate cases. The bill analysis, discussing a proposal affecting only section 261.5 offenders, does not reflect a *comparative* determination that such offenders are less deserving of mandatory registration than those convicted of violating section 288a.

Historically, again, oral copulation was legally disfavored compared to intercourse with minors not because it allowed no possibility of pregnancy — a fact that would seem, if anything, comparatively to mitigate the crime — but because it was regarded as unnatural and perverted and was associated with homosexuals. To treat the distinction in section 290 as reflecting a contemporary judgment about the need to register those who engage in oral copulation with minors, but not those who engage in sexual intercourse, would be to indulge in the kind of "highly fictional" justification we abjured in *Brown v. Merlo*, *supra*, 8 Cal.3d at page 866, footnote 7.

The Legislature has never made an affirmative decision to impose mandatory registration differentially on those convicted of voluntary oral sex with minors. From the registration scheme's beginning, registration has been mandatory for all those convicted of "sex perversions" under section 288a, regardless of the participants' ages or the voluntary nature of the act, in accord with the belief that "homosexual offenders should be registered." (*The Consenting Adult Homosexual*, *supra*, 13 UCLA L.Rev. at p. 737). Realistically assessed, the postliberalization distinction as to acts with minors is not the product of a legislative judgment aimed at acts with minors specifically, but a remnant of the blanket disapproval of oral copulation prevailing before decriminalization.

25

The majority argues *Hofsheier*, *supra*, 37 Cal.4th 1185, presented the Legislature with a " 'Hobson's choice' " in that the only way mandatory registration could be maintained for oral copulation, under our decision, would be by requiring mandatory registration for unlawful sexual intercourse as well, which the Legislature has reasons for declining to do. (Maj. opn., *ante*, at p. 10.) Not so. If the Legislature continues to believe all section 288a offenders are so dangerous as to require mandatory lifetime registration as sex offenders, it can reenact section 290 with findings to that effect. Such findings would directly rebut *Hofsheier*'s conclusion the listing of section 288a but not section 261.5 as a mandatory registration offense is an anachronistic holdover from the preliberalization period.[7]

The majority complains that lower courts have extended *Hofsheier* beyond the particular set of offenses it addressed, thus "denying significant effect to section 290." (Maj. opn., *ante*, at p. 8.) The majority omits to mention the numerous appellate decisions *rejecting* equal protection claims based on

---

[7] The 2007 enactment of section 290.019, cited in the majority opinion at page 14, does not reflect a contemporary legislative reevaluation of sex offender registration for those committing violations of sections 286 and 288a against minors. The provisions of section 290.019, allowing section 286 and section 288a offenders whose crimes were committed with a consenting adult prior to 1976 to seek relief from their registration requirements, were actually enacted a decade earlier as a subdivision of section 290. (Stats. 1997, ch. 821, § 3, pp. 5698–5699 [adding subd. (a)(2)(F) to § 290].) That legislation was intended to "address an unknown number of persons required to register for acts which once were criminal — specified sexual activities between consenting adults — which no longer are criminal under current law." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 290 (1997–1998 Reg. Sess.) as amended May 1, 1997, p. 5.) The 1997 legislative decision to provide a means of registration relief for what was by then *noncriminal* conduct with *adults* does not reflect a decision on the comparative merits of mandatory registration for oral copulation with minors and unlawful sexual intercourse with minors.

*Hofsheier*, either because the two classes of offenders were not deemed similarly situated or because the court discerned rational grounds for the legislative distinction in treatment.**8** When *Hofsheier* is understood as resting crucially on the history of section 288a, moreover, its potential application to other statutes is quite limited. For a high court's constitutional decision to affect *some* additional cases is hardly unusual and provides no grounds for overruling it; the effect in this instance has been well short of a revolution in equal protection law.

### III. Conclusion

Our decision in *Hofsheier*, *supra*, 37 Cal.4th 1185, was a relatively narrow one, applying well-established equal protection principles to the particular history and structure of sections 261.5, 288a, and 290. We concluded the differential requirement of mandatory sex offender registration for those convicted of oral copulation with a 16 or 17 year old, but not for those convicted of unlawful sexual intercourse with a minor the same age, was a historical atavism without rational relation to a legitimate state purpose. In the discussion above, I have revisited the

---

**8** A few of the many possible examples: *People v. Doyle* (2013) 220 Cal.App.4th 1251, 1264 ("DUI offenders with prior DUI manslaughter convictions are not similarly situated with DUI offenders who have prior convictions other than for DUI manslaughter."); *Shoemaker v. Harris* (2013) 214 Cal.App.4th 1210, 1226–1231 (Legislature could rationally require registration for possession of child pornography despite omission of arguably more culpable offenses); *People v. Brandao* (2012) 203 Cal.App.4th 436, 445–448 (defendant convicted of annoying or molesting a child not similarly situated with one convicted of voluntary sex acts with a minor); *People v. Miranda* (2011) 199 Cal.App.4th 1403, 1427–1429 (same as to defendant convicted of sex acts with a victim incapable of giving consent due to mental disability); *People v. Honan* (2010) 186 Cal.App.4th 175, 180–183 (defendant convicted of indecent exposure not similarly situated, for registration purposes, with one convicted of a lewd act in public); *People v. Valdez* (2009) 174 Cal.App.4th 1528, 1531–1532 (Legislature could rationally bar probation for forcible sexual penetration with a foreign object but not for forcible spousal rape).

rationale for that conclusion, explaining in greater detail the specific statutory history on which it rests and, in the process, clarifying its limitations. I have further considered events since *Hofsheier*'s decision, finding no widespread confusion or difficulty of application, no criticism (but some praise) of our decision from the legal academy or the courts of other jurisdictions, and social effects that appear beneficial rather than adverse. As there are no compelling grounds for concluding *Hofsheier* is both wrong and mischievous, we should not overrule it.

In requiring that section 288a offenders be treated the same as section 261.5 offenders with regard to sex offender registration, *Hofsheier* mitigated the discriminatory effects of our registration scheme as it had survived since preliberalization days. Because section 261.5 is omitted from the list of mandatory registration offenses in section 290, the prosecutor in a case involving a perpetrator's sexual relationship with a minor of the *opposite* sex commonly can choose to allow judicial discretion in registration by charging only a violation of section 261.5 or by accepting a negotiated plea to that offense alone when the circumstances of the case do not indicate predatory behavior or other grounds for fearing repetition. Before our decision in *Hofsheier*, no comparable option existed for a case involving a relationship with a minor of the *same* sex. Now, by overruling *Hofsheier*, the majority reinstitutes a scheme that had a disproportionately adverse effect on gay and lesbian youth and unnecessarily saddled nonpredatory offenders of either sexual orientation with the stigma and restricted liberties attendant on sex offender registration.

Adherence to stare decisis is not a rigid command, but in this instance it is the wiser course; *Hofsheier* should not be overruled.  For these reasons, I respectfully dissent.

**WERDEGAR, J.**

**I CONCUR:**

**LIU, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Johnson v. California Department of Justice

_____

**Unpublished Opinion** XXX NP opn. filed 1/3/13 – 4th Dist., Div. 2
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S209167
**Date Filed:** January 29, 2015

_____

**Court:** Superior
**County:** San Bernardino
**Judge:** David Cohn

_____

**Counsel:**

Marilee Marshall & Associates and Marilee Marshall for Plaintiff and Appellant.

Laura Beth Arnold for California Public Defender's Association as Amicus Curiae on behalf of Plaintiff and Appellant.

No appearance for Respondent.

Michael A. Ramos, District Attorney and Brent J. Schultze, Deputy District Attorney, for Real Party in Interest and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Marilee Marshall
Marilee Marshall & Associates
523 W. Sixth Street, Suite 1109
Los Angeles, CA  90014
(213) 489-7715

Brent J. Schultze
Deputy District Attorney
412 W. Hospitality Lane, First Floor
San Bernardino, CA  92415-0042
(909) 891-3302